UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| STATE OF TENNESSEE, ex rel. ROBERT E. COOPER, JR., ATTORNEY GENERAL and REPORTER, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 3:13-00193 Judge Sharp |
| THE MCGRAW-HILL COMPANIES, INC., a New York corporation, and STANDARD & POOR'S FINANCIAL SERVICES LLC, a Delaware limited liability company, | ) ) ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM**

This civil enforcement action is among some seventeen cases in which various state Attorneys General have sued Defendants McGraw-Hill Companies, Inc. and Standard & Poor's Financial Services, LLC, alleging that S&P yielded to pressure from issuers of securities to assign higher credit ratings than it otherwise would have, thereby rendering"false" certain representations made by S&P about the independence of its credit ratings process. Contending that all of the actions are "coordinated" and "based on the same theory and assert the same basic factual allegations," (Docket No. 30 at 2) Defendants have moved the Judicial Panel on Multi-District Litigation ("JPMDL") to coordinate and/or consolidate the pretrial proceedings in accordance with 28 U.S.C. § 1407, and have moved to stay the coordinated cases pending resolution of that request.

Plaintiff, the State of Tennessee, objects to a stay in this case because this action is subject to remand to the Davidson Circuit Court where it originated. Both the Motion to Stay and the Motion to Remand have been briefed by the parties. Additionally, the United States has filed a

1

"Statement of Interest Supporting Motions to Remand Filed by State Attorneys General." (Docket No. 31-1). For the reasons set out below, the Court will grant Defendants' Motion to Stay,[1] and this case will be stayed pending a ruling by the JPMDL on whether the actions brought by the states Attorneys General should be consolidated.

## I. BACKGROUND

This action was filed in the Circuit Court of Davidson County on February 5, 2013, on the same day that the United States Department of Justice and a group of state Attorneys General held a nationally televised press conference that sixteen cases had been filed against McGraw-Hill based upon S&P's issuance of credit ratings. The upshot of the complaint in this action and in those filed by the other Attorneys General is that S&P's methodology for rating certain structured finance securities was corrupted by a desire for increased revenue market share, a desire that was driven by the fact that S&P is compensated by the issuers it rates.

More specifically, the Complaint in this action alleges the following:

> 5. S&P consistently represents that its analysis of structured finance securities is independent, objective and the result of the highest quality credit analytics that are available to S&P. Indeed, S&P's reputation for independence, objectivity, and integrity is emphasized by S&P to the users of its ratings on a regular basis.
>
>     \*                           \*                           \*
>
> 7. S&P has further emphasized this representation in its publicly available Code of Conduct in which S&P explicitly pledges that its analysis of structured finance securities is objective and uninfluenced by 'the potential effect . . . on [S&P], of an issuer, an investor, or any other market participant.'
>
> 8. Despite this explicit representation, S&P failed to follow its own statements of independence and objectivity when analyzing structured finance securities and

---

[1] With those rulings, Plaintiff's Motion for Expedited ruling is deemed moot. Additionally, the Court will deny Defendants' request for oral argument because the briefing provided by the parties is more than adequate to present the legal arguments necessary to resolve the pending motion to stay.

2

thereby violated the trust that it successfully cultivated in the marketplace. Moreover, S&P's false representations of independence and objectivity were especially misleading and harmful to participants in the structured finance securities market because structured finance securities are particularly complex and their creditworthiness is difficult, if not impossible, to evaluate even for the most sophisticated financial entities.

9. Starting in at least 2001, S&P allowed its appetite for increased revenue and market share in the structured finance rating market to influence the analytical models it developed for analyzing structured finance securities and, ultimately, the ratings that were assigned to these investments. Similar revenue and market share motivations dictated the manner in which S&P monitored the performance of the structured finance securities that S&P had already rated.

10. In particular, by at least 2001, S&P's desire to maximize revenue and market share by rating as many structured finance deals as possible led S&P to cater to the preferences of large investment banks and other repeat issuers of structured finance securities that dominated S&P's revenue base, rather than focusing on what S&P outwardly represented it was doing, which was providing independent and objective credit analysis.

11. Thus, when formulating its analytical models for rating structured finance securities, S&P made adjustments to its models based on what would maximize its revenue and, therefore, be best for its own business. As a result, starting in at least 2001, S&P utilized analytical models that its senior managers knew were influenced by market share and revenue considerations. Similarly, S&P failed to use the best analytic tools available to it to conduct surveillance on those structured finance securities that it already had rated. S&P engaged in this conduct because it enabled S&P to continue to assign the high ratings that S&P's regular customers desired, thus enabling S&P to maximize its revenue and preserve its already high market share for rating structured finance securities.

(Docket No. 1-1, Complaint ¶¶ 5 & 7-11).

Some or all of these same allegations may appear in the complaints filed by the various state Attorneys General, as Defendants claim that "over ninety-six percent of the factual allegation paragraphs in Plaintiff's Complaint – almost every single one – contain identical or substantially similarly allegations to those in the other states' complaints. Regardless, and unlike the complaints filed in other states, the State of Tennessee's complaint is grounded on alleged violations of the

Tennessee Consumer Protection Act ("TCPA"), Tenn. Code Ann. §§ 47-18-101 *et seq.*, specifically the "unfair, deceptive, and illegal business practice of systematically misrepresenting that [S&P's] analysis of structure finance securities was objective, independent and not influenced by either S&P's or its clients' financial interest," and that "[t]hese representations were untrue." (Id. ¶ 4).

According to the State of Tennessee, the Complaint was the result of a three year investigation. Prior to filing, the Attorney General provided McGraw-Hill with the statutory ten day notice required by § 47-18-108 of the TCPA. That notice was received by counsel for McGraw-Hill on January 31, 2013, whereupon counsel for both parties participated in a conference call on February 1, 2013. During the conference call, Defendants were informed that any further discussion would have to take place on or before the close of business on February 4, 2013. No discussions were held by the deadline and, instead, McGraw-Hill filed a declaratory action in this Court against the State of Tennessee through its Attorney General in a case styled *McGraw-Hill v. Cooper*, Case No. 3:13-00089 (M.D. Tenn. 2013). The State of Tennessee learned that the declaratory judgment action had been filed when it received a courtesy copy of the complaint on February 4, 2013, the day before the State filed its own lawsuit in the Chancery Court.

In the declaratory judgment action, McGraw-Hill alleges in its Amended Complaint that the injunctive relief sought by the Attorney General on his TCPA claim would unduly burden interstate commerce and would require S&P to conform to a regulatory standard with respect to potential conflicts of interest that itself conflicts with the scheme established by Congress. It also alleges that the Constitution does not permit the Attorney General to pursue TCPA claims against McGraw-Hill because S&P's credit rating opinions are subject to protection under the First Amendment and cannot serve as the basis for a finding of liability in the absence of actual malice. Defendant seeks

declaratory and injunctive relief, as well as attorney's fees under pursuant to 42 U.S.C. § 1988.

## II. DISCUSSION

As indicated, two substantive motions are presented for ruling: the State of Tennessee's Motion for Remand, and McGraw-Hill's Motion to Stay. These motions raise the initial question of which motion should be considered first.

On the one hand, subject matter jurisdiction involves a court's power to hear a case and, therefore, courts have "an independent obligation to determine" whether that jurisdiction exists. Arbaugh v. Y&H Corp., 546 U.S. 500, 514 (2006). On the other hand, considerations of judicial economy and other concerns may justify a court's delay in exercising what is otherwise the "virtually unflagging obligation of the federal court to exercise the jurisdiction" given it by Congress. See, Colorado River Water Conserv. Dist. v. United States, 424 U.S. 800, 817 (1976).

The Rules for Multi-District Litigation neither require nor prohibit a Court from deciding a pending motion while awaiting a determination from the JPMDL as to whether cases will be consolidated. Specifically, Rule 2(d) provides:

> (d) Pendency of Motion or Conditional Order. The pendency of a motion, order to show cause, conditional transfer order or conditional remand order before the Panel pursuant to 28 U.S.C. § 1407 does not affect or suspend orders and pretrial proceedings in any pending federal district court action and does not limit the pretrial jurisdiction of that court. An order to transfer or remand pursuant to 28 U.S.C. § 1407 shall be effective only upon its filing with the clerk of the transferee district court.

MDL Rule 2(d). Because the court in which the action is originally filed retains jurisdiction over the case, it should not "automatically postpone rulings on pending motions" and, "therefore, matters such as motions to dismiss or to remand, raising issues *unique* to the particular case, may be

5

particularly appropriate for resolution before the Panel acts on the motion to transfer." MANUAL FOR COMPLEX LITIGATION, FOURTH § 20.131 (FJC 2004) (emphasis added). "At the same time, it may be advisable to defer certain matters until the Panel has the opportunity to rule on transfer." Id.

Many courts presented with a both a motion to remand (or motion to dismiss) and a motion to stay while a request to consolidate is pending before the JPMDL utilize what might aptly be described as a "quick look" approach to the jurisdictional issue. Under this approach,

> . . . [A] court should first give preliminary scrutiny to the merits of the motion to remand. If this preliminary assessment suggests that removal was improper, the court should promptly complete its consideration and remand the case to state court.
>
> If, on the other hand, the jurisdictional issue appears factually or legally difficult, the court's second step should be to determine whether identical or similar jurisdictional issues have been raised in other cases that have been or may be transferred to the MDL proceeding. The only reason to permit the transferee court to decide the jurisdictional issue would be to further judicial economy and consistency. . . . If the jurisdictional issue in the particular case is different from those in the other cases subject or potentially subject to MDL jurisdiction, these values do not come into play. . . .
>
> Only if the jurisdictional issue is both difficult and similar or identical to those in cases transferred or likely to be transferred should the court proceed to the third step and consider the motion to stay. But considering the motion to stay does not mandate that a stay should be granted[.]

Meyers v. Bayer AG, 143 F. Supp.2d 1044, 1049 (E.D. Wis. 2001); see, Betts v. Eli Lilly and Co., 435 F. Supp.2d 1180, 1182 (S.D. Ala. 2006) (adopting approach in Meyers "because it appears better calculated to vindicate the interests of judicial economy, consistency of result, and minimization of prejudice to the parties than a reflexive rule that automatically defers decision to an MDL court whenever it can be predicted that an issue at least superficially similar may arise in other transferred cases"); Alegre v. Aguayo, 2007 WL 141891 at *2 (N.D. Ill. 2007) (describing Meyers as providing "a compelling and logical framework for deciding whether to first address a

6

remand motion or a motion to stay" and "adopt[ing] Meyers framework"); Martin v. Merck & Co., Inc., 2005 WL 194483 at *1 (E.D. Cal. 2005) ("[t]his court has . . . previously addressed this question and has adopted a three step methodology set forth in Meyers").

In this case, the State cites Meyers and argues that "[a] preliminary look readily points to remand and the expeditious return of this case back to state court because at best S&P has only relied on potential federal defenses as its alleged bases for federal jurisdiction." (Docket No. 24 at 12).

However, McGraw-Hill claims that it is not relying upon federal defenses to establish jurisdiction, and in its Notice of Removal specifically asserts:

> . . . The claims that Plaintiff seeks to assert "necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grabel & Sons Metal Products, Inc. v. Darue Engineering & Manufacturing*, 545 U.S. 308, 314 (2005); *see also Gunn v. Minton*, No. 11-118, 2013 WL 610193 U.S. Feb. 20, 2013) (reaffirming *Grable* standard). In particular, . . ., the claims that the Plaintiff seeks to assert, together with a wave of parallel cases, (i) threaten to disrupt and supplant a complex and exclusive federal regulatory scheme enacted by Congress and (ii) require the evaluation and adjudication of the scope and nature of that scheme in order to determine whether the relief sought by the State is available to it and consistent with the United States Constitution.

(Docket No. 1 at 1-2).

Both the State of Tennessee and the United States argue that McGraw-Hill's reliance on Grable is misplaced because this case does not fall within the "special and small category of cases" comprising the exception to the general rule that there is no federal-question jurisdiction over well-pleaded state law claims, even those that present a possible federal defense. This issue, however, may not be that clear-cut.

In Pennsylvania v. Mc-Graw Hill Co., Inc., 2013 WL 1397434 (M.D. Pa. April 5, 2013), the

court addressed the Commonwealth of Pennsylvania's parallel action against McGraw-Hill based upon S&P's securities ratings. There, like here, the parties disputed whether the state's request for an injunction conflicted with the First Amendment and the CRARA, and whether McGraw-Hill merely asserted federal defenses when it removed the action to federal court. In declining to address the Commonwealth's Motion to Remand and ultimately deciding to stay the case, the court wrote:

> . . . The instant jurisdictional inquiry necessarily demands an expansive review of case law governing the history and application of the Grable holding as well as case law and legislative history governing the scope and application of CRARA. The reviewing court will be required to scrutinize the Commonwealth's factual and legal allegations in order to isolate those that implicate CRARA and, thereafter, identify the presence of any federal issues. Obviously, this is not a simple exercise. Indeed, the extensive briefing in both Defendants' removal and the Commonwealth's remand submissions demonstrate the complexity of the jurisdictional issues.
>
> Jurisdictional issues will be similar, if not identical, in the other claims brought by state Attorneys General subject to transfer by the JPML. Defendants aver that the other state actions are based on "the same, if not absolutely identical, factual allegations," similar legal theories, and similar prayers for relief. Even a cursory review of the complaints in the other state actions supports this contention. Defendants' notice of removal and their motion to transfer assert that the basis for removal under Grable is present for each of the state actions. There is little doubt that identical jurisdictional issues and motions to remand will be raised in the other actions. The Commonwealth correctly observes that the analysis of a court's subject matter jurisdiction requires an individualized inquiry. However, when the jurisdictional issues are purely legal in nature and when the issues are virtually identical to those present in other cases, district courts should defer to the possibility of consolidation and determination by one judicial body to promote judicial economy and to avoid inconsistent judgments.

Id. at **3-4 (internal citations to record omitted).

This Court concurs with the foregoing. Further, the fact that the United States has undertaken to file a comprehensive brief in this case on behalf of all the Attorneys General seeking remand only underscores the possibility that the jurisdictional issues may be complex and present issues that are common to all of the actions that have been filed. Accordingly, the Court turns to the

8

propriety of issuing a stay in this case.

"Whether to grant a stay of proceedings pending a final ruling of the MDL Panel on the transfer of a case is within the inherent power of the court and is discretionary." Fox v. Depuy Orthopaedics, Inc., 2011 WL 6057509 (W.D. Ky. 2011) (collecting cases). "In exercising its 'substantial discretion to determine whether to grant a stay,' a district court generally considers (1) 'any prejudice to the non-moving party if a stay is granted,' (2) 'any prejudice to the moving party if a stay is not granted,' and (3) 'the extent to which judicial economy and efficiency would be served by the entry of a stay.'" In re Honda of America Mfg., Inc. ERISA Fees Litigation, 2009 WL 700696 at *1 (S.D. Ohio 2009).

The State of Tennessee claims prejudice due to the fact that it might have to travel to argue the motion to remand, travel that will be wasted "[i]f the transferee court eventually determines that the federal court lacks subject matter jurisdiction and remands this case back to state court." (Docket No. 24 at 5). Any such costs, however, would not appear to be inordinate, and, in fact, there may be some economy of scale in the various Attorneys General consolidating and coordinating their efforts before the JPMDL. See, Comm. of Pennsylvania, 2013 WL 1397434 at * 5 ("The Commonwealth would have the benefit of coordination with other states in litigating pretrial matters as well as the protection inherent in a uniform resolution of pretrial issues."

The State also contends that its citizens will be harmed by any delay which would allow S&P's allegedly unlawful conduct to continue unchecked. This sense of urgency seems a bit exaggerated in a case where the State claims to have spent three years investigating the matter. Regardless, and contrary to the State's assertion that the delay could take years, it appears that any delay between the filing of the motion seeking consolidation and a ruling by the JPMDL would "be

9

relatively short." Id. (noting that the parties anticipated a delay of only "approximately 60-90 days.").

The State further maintains that if the stay is denied, no hardship will result to McGraw-Hill because it is required to respond to the State's Motion to Remand regardless of which court decides the matter. It seems, however, that defending more than a dozen different actions in one place would be markedly simpler then defending each of those actions in different *fora*. See, id. (footnote omitted) (Denial of the stay would prejudice the Defendants who would be forced to litigate 16 separate actions simultaneously. The costs and loss of resources associated with such an undertaking are obvious.").

The State argues that judicial economy would be served by this Court addressing the Motion to Remand in the first instance, and that judicial economy would be hindered by "all the different state laws which would be implicated by an MDL proceeding." (Docket No. 24 at 8). This argument is premised on the jurisdictional issue being a relatively easily matter to resolve, something which this Court has already observed to be far from clear. Moreover, the argument about various state laws being implicated in deciding the jurisdictional issue does not appear to be the case. To the extent that various states' laws may be implicated were the cases consolidated, this is an argument more directed to whether the cases should be consolidated, not whether this case should be stayed.

If the JPML accepts transfer of the cases, then just one federal court will decide the jurisdictional issue, instead of seventeen. Obviously this would promote judicial economy and prevent the possibility of inconsistent rulings. Yet even if the JPML denies transfer, the remand issue can be addressed in this Court in relatively short order because the matter has been fully

briefed by the parties.

In sum, the Court finds that a stay is appropriate because any prejudice to the State of Tennessee would be minimal and far less than the harm that could befall McGraw-Hill were the stay not granted. Further, given the number of cases involved, and the possibility that they may be consolidated, judicial economy is served by the issuance of a stay which is expected to be of a relatively short duration.

### III. CONCLUSION

Based upon the foregoing, the Court will stay this case and defer ruling on the State's request for a remand until the JPMDL determines whether this and the other coordinated actions should be consolidated for pretrial purposes. The Court will also deny Plaintiff's request for expedited ruling and Defendants' request for oral argument.

An appropriate Order will be entered.

_____
KEVIN H. SHARP
UNITED STATES DISTRICT JUDGE